HERBERT R. RUNDALE, complainant-respondent,

*v.*

MINNE A. HILL AND EDITH BELLWOOD, defendants-appellants.

[Argued November term, 1918. Decided November term, 1918.]

Chapter 154, *P. L. 1916*, provides a method of abating a public nuisance in a summary manner, in the court of chancery, involving, *inter alia*, the sale of the premises in which the disorderly house is located, regardless of the knowledge of the owner, as to the disorderly conduct of the inmates. It was necessary to prove ownership of the premises in one of the defendants, and one of the complainant's solicitors testified that he had searched the records and found title in the alleged owner.—*Held*, not the best evidence and that the property in question could not be appropriated and placed in *custodia legis*, without proper legal proof of its ownership.—*Held, also*, that a defendant joining in a petition of appeal, without giving notice of appeal, was *coram non judice*.

*Messrs. Endicott & Endicott,* for the respondent.

*Mr. Ulysses G. Styron* and *Mr. Clifton C. Shinn,* for the appellants.

The opinion of the court was delivered by

MINTURN, J.

Based upon the act approved March 17th, 1916 (*P. L. 1916, ch. 154*) entitled

"An act declaring all buildings and places wherein or upon which acts of lewdness, assignation or prostitution are permitted to occur to be nuisances, and providing for the abatement thereof by the court of chancery,"

the complainant, a resident of Atlantic City, filed his bill alleging, *inter alia*, the statutory delinquencies against the moral order in the premises No. 131 North Carolina avenue, in that

city, of which Minnie A. Hill was alleged to be owner, and Edith Bellwood, tenant.

The learned vice-chancellor ordered the issuance of a temporary injunction. The legal character and constitutionality of this procedure presents the subject-matter of the controversy. To comprehend this contention it is necessary to remark that the effect of the restraining order under the provisions of the act is to cause the *locus in quo,* regardless of the owner's knowledge of the situation, to be placed in *custodia legis,* until the termination of the suit, and finally to be publicly sold should the exigencies of the situation require it.

The scheme of this procedure akin entirely to the procedure peculiar to the admiralty jurisdiction, or proceedings *in rem,* in which the tenant in legislative contemplation occupies the status of the master of a vessel, is attacked *in limine* as unconstitutional, as violative of the common law right of the owner of the *locus,* to be tried and heard before he and his property shall be condemned, in a *quasi* criminal proceeding in an equity forum which since its origin might abate a nuisance, but which was never conceded the common law jurisdiction inherent in and peculiar to the king's bench in England, and its constitutional successor in this state.

*Flanigan* v. *Guggenheim Co., 63 N. J. Law 647.*

While the statute in question is exceptional and unique in its scheme of jurisdiction and procedure, and fruitful of provisions lending scope to generous forensic debate, we do not find it necessary in view of the manner in which the case comes before us to pass upon the mooted question of its constitutionality or to say more than that we perceive no testimony, except essentially of a hearsay character, upon which the order against the defendant Hill is based. Mr. Endicott, Jr., alone attempted to supply the essential testimony as to ownership by submitting his views upon a search of the title, but this testimony, unsupplemented by the records upon which it was based or properly authenticated copies of them, is of a hearsay character and presents no substantial legal basis for a judgment of any character, much less one that in its novel operation appropriates the property of a defendant and places it for a year in *custodia*

*legis* and ultimately, if the exigency should require it, sells it according to the common law procedure on execution.

*1 Greenl. Ev. 99; Lomerson* v. *Hoffman, 24 N. J. Law.674; R. C. L. 57* and cases.

As to the defendant Hill, therefore, the order is without legal evidence to support it, and must be set aside.

The case of Bellwood, the tenant, we do not regard as legally before us. While she joins in the petition of appeal with her co-defendant, Hill, she gave no notice of appeal as required by the statute and rules, and her case therefore being *coram non judice* must be dismissed.

*For affirmance*—BLACK, WHITE, WILLIAMS, GARDNER—4.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, HEPPENHEIMER, TAYLOR—9.